1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                       SOUTHERN DISTRICT OF CALIFORNIA

8

9   ANGELO DON SANCHEZ,                    Case No.:  16cv31-LAB (BLM)

                                Plaintiff,
                                           **REPORT AND RECOMMENDATION FOR**
10                                          **ORDER GRANTING PLAINTIFF'S**
    v.                                      **MOTION FOR SUMMARY JUDGMENT**
11                                          **AND DENYING DEFENDANT'S MOTION**
    CAROLYN W. COLVIN,                      **FOR SUMMARY JUDGMENT**
12  Acting Commissioner of Social Security,
                                Defendant.
13

14

15        Plaintiff Angelo Don Sanchez brought this action for judicial review of the Social Security

16   Commissioner's ("Commissioner") denial of his claim for disability insurance benefits.  ECF No.

17   1.  Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 11-1 ("Pl.'s Mot.")],

18   Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF Nos.

19   12-1 and 13-1[1] ("Def.'s Mot.")], and Plaintiff's Reply [ECF No. 14 ("Pl.'s Reply")].

20   _____

21   [1]  Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for
     Summary Judgment appear on the Docket as two documents, numbers 12 and 13.  The content
22   of the documents are the same so, for clarity, the Court will refer to Defendant's cross-motion
     and opposition as one document, namely "Def.'s Mot." and will cite to ECF No. 12-1.

                                           1

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.   For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED,** Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

## PROCEDURAL BACKGROUND

On November 28, 2011, Plaintiff protectively filed a  Title II application for disability insurance benefits, alleging disability beginning on November 27, 2011.  See Administrative Record ("AR") at 127-28.   The claim was denied initially on March 5, 2012, and upon reconsideration on October 10, 2012, resulting in Plaintiff's request for an administrative hearing.  Id. at 58-66, 71.

On April 7, 2014, Administrative Law Judge ("ALJ") Michael Radensky conducted a video hearing.  Id. at 25-41.  Plaintiff, who was represented by counsel, and an impartial vocational expert ("VE") testified at the hearing.  See id.  In a written decision dated April 25, 2014, ALJ Radensky determined that Plaintiff is "not disabled under sections 216(i) and 223(d) of the Social Security Act."  Id. at 10-16.  Plaintiff requested review by the Appeals Council.  Id. at 5-6.  In an order dated November 5, 2015, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-4.

On January 6, 2016, Plaintiff filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On May 13, 2016, Plaintiff filed a motion for summary judgment alleging that the ALJ failed to properly evaluate the severity of Plaintiff's impairments.  Pl.'s Mot.

at 3.   On June 7, 2016, Defendant filed a timely opposition and cross-motion for summary

judgment asserting that the "ALJ's decision [that Plaintiff's migraine headaches did not qualify

as a severe impairment under the Act] was reasonable and supported by substantial evidence

in the record."   Def.'s Mot. at 4.   On June 24, 2016, Plaintiff timely filed a reply.   Pl.'s Reply.

Defendant did not file a reply.   See Docket.

## ALJ's DECISION

On April 25, 2014, the ALJ issued a written decision finding that Plaintiff is not disabled

as defined in the Social Security Act.   AR at 10-16.   Initially, the ALJ found that Plaintiff had not

engaged in substantial gainful employment since November 27, 2011, the alleged date of onset.

Id. at 12.   At step two, the ALJ determined that Plaintiff had medically determinable impairments

of "migraine headaches" and "depression" but found that Plaintiff did not have the requisite

"severe impairment or combination of impairments" and therefore was not disabled.   Id. at 12,

16.   In reaching this decision, the ALJ found that Plaintiff's "allegations concerning the intensity,

persistence and limiting effects of [his] symptoms are less than fully credible."   Id. at 13.   The

ALJ also found that the "allegations of severe headache pain and accompanying symptoms are

inconsistent with the objective medical evidence, which indicates an attempt by [Plaintiff] to

exaggerate the severity of his symptoms."   Id. at 13-14.   The ALJ rejected Dr. William Devor's

March 18, 2014 disability statement because it "contained no specific limitations and was not

supported by the objective medical evidence or [Plaintiff's] admitted activities."   Id. at 15.

Finally, the ALJ gave "great weight to the State agency medical consultants who opined

[Plaintiff's] physical and mental impairments were nonsevere" because the opinions were

"reasonable and consistent with the evidence."   Id.

3

# ADMINISTRATIVE RECORD

## A.   Plaintiff's Medical Records

The medical records establish that Dr. William Devor has been treating Plaintiff for migraine headaches since at least 2010.  AR at 207.   Between 2010 and 2014, Dr. Devor examined Plaintiff approximately every three months and repeatedly noted that Plaintiff reported frequently occurring severe headaches.  Id. at 207-12, 227-32, 253-58, 261-66, 270-76, 281-84, 311-15, 319-24, and 332-76.   During this time period, Plaintiff received quarterly Botox injections and reported varying degrees of relief.  Id. at 207, 227, 254, 262, 272, 283, 313, 321, 347, 345, 343, 339, and 334.

In December of 2010, Dr. Devor reported that Plaintiff's most significant headaches were related to stress and that Plaintiff's stress level was high due to his unemployment and marital problems.[2]  Id. at 207.  Dr. Devor indicated Plaintiff is taking ibuprofen for his headaches and reports "good relief" from the Botox injections, although he notes that his headaches "have been somewhat worse lately."  Id.  In March 2011, Dr. Devor noted that Plaintiff reported that he is attending school and experiencing better sleep habits.  Id. at 227.  In June 2011, Dr. Devor noted that Plaintiff reported experiencing daily headaches and that his ability to concentrate was compromised.  Id. at 253.

In September 2011, Plaintiff reported that he continues to experience daily headaches

---

[2]  This statement is repeated in subsequent exam notes but always as part of the December 2010 exam notes.  See id. at 227, 253, 261, 270, and 281.  Thus, the record does not establish whether Plaintiff's most severe headaches continued to be related to stress, whether Plaintiff's stress level remained the same, and whether the stress level remained primarily caused by the same two factors.

4

and difficulty concentrating and stated that the pain averaged 7-8 on a scale of 10.  Id. at 261.

Plaintiff felt that ibuprofen and Wellbutrin were not helping and asked for an alternative

antidepressant.  Id.  During this examination, Dr. Devor opined that Plaintiff was "[p]ositive for

depression." Id. at 262.  Dr. Devor continued the Botox injections but discontinued the ibuprofen

and Nortriptyline and Citalopram.  Id. at 262-63, 265-66.  In December 2011, Dr. Devor noted

that Plaintiff was experiencing "increasing mood swings and irritability." Id. at 271.  Dr. Devor

reported that Plaintiff was again taking ibuprofen and had restarted Topamax.  Id. at 270.  In

his final assessment, Dr. Devor stated "[h]eadache[s] may be becoming refractory to Botox and

oral medications." Id. at 274.  In April 2012, Dr. Devor reported essentially the same information

but definitively stated that "headache[s] have become refractory to Botox and medications." Id.

at 281-84.

On May 20, 2012, Plaintiff was seen by a nurse practitioner, who reported that Plaintiff

had experienced four days of migraine headaches.  Id. at 289.  She reported that Plaintiff told

her that he "gets migraines 3 x month – this bad only 1 x q 2 months – usu toradol helps then

– this headache otherwise same as others." Id.  Toradol was injected intramuscularly and he

was prescribed Promethazine.  Id. at 290.  The Toradol injection was repeated on June 21,

2012. Id. at 296-97.  On June 23, 2012, Plaintiff returned to Kaiser Permanente and reported

the Toradol had only provided relief for about one day and that he was experiencing a migraine

which he rated 10/10 and which caused sharp pain, light sensitivity, and nausea.  Id. at 302.

Dr. Richard Skinner ordered another Toradol injection and instructed Plaintiff to use Tylenol with

codeine at home.  Id. at 303-04.

On June 27, 2012, Dr. Devor examined Plaintiff and noted Plaintiff's concerns that he has

been experiencing more headaches and more severe headaches and that the Toradol injections only provide relief for about 12 hours.  Id. at 312.  Plaintiff also reported that the Tylenol with codeine was not helpful.  Id.  Dr. Devor opined that the "headache[s] have become refractory to Botox and medications.  Management remains challenging." Id. at 313.  Dr. Devor prescribed Botox and several new drugs.  Id. at 313-14.  During the October 3, 2012 appointment, Dr. Devor made the same observations but noted that he "[w]ill try higher dose of Botox temporalis and occipitalis areas."  Id. at 321.  Dr. Devor discontinued Plaintiff's prescription for Celexa because it was ineffective but prescribed other medications for sleep, pain, and migraine management.  Id. at 322-23.  On December 19, 2012, Plaintiff received another Botox injection and Dr. Devor noted "Headaches are still bad.  Pain is in the same location.  He is using nasal Imitrex and tramadol."  Id. at 346-47.

On March 4, 2013, Plaintiff returned to Dr. Devor for his Botox injection.  Id. at 344-45. Dr. Devor noted that Plaintiff is "[s]till having daily headaches.  Botox helps but only for about 7-8 weeks.  He remains unable to work because of the severity of his headaches.  Pain is 8-9 on a scale of 10."  Id. at 344.  In May 2013, Dr. Devor recorded that "Headaches remain severe and continue to occur daily.  Severity averaging 8 out of 10. Pain is frontotemporal and feels like someone screwing a corkscrew into his head.  Vimpat helps stabilize his mood but has not helped reduce the pain.  Has nausea but no vomiting."  Id. at 342.  Dr. Devor's assessment included "Continued difficult headaches.  Benefit of higher dosage of Botox unclear."  Id. at 343. In July 2013, Dr. Devor reiterated May's observations and concerns and noted that "Nasal imitrex helps if [Plaintiff] takes it early" and that Plaintiff "[r]an out of nadolol.  Heart raced afterwards." Id. at 340.  Dr. Devor also expressed a concern that "[a] generalized arteriopathy possible akin

to CADASIL.  Will add Verapamil." <u>Id.</u> at 341.  In November 2013, Dr. Devor noted that Plaintiff "[c]ontinues to suffer from daily headaches.  Pain ranges from a 5 to a 9 in severity.  Vision blurred with the more severe headaches.  He stopped both the Verapamil, and the Topamax without any worsening of his headaches.  No longer taking Vimpat either." <u>Id.</u> at 337.  Dr. Devor listed six medications that he prescribed to Plaintiff.  <u>Id.</u>

In January 2014, Dr. Devor reported Plaintiff's statement that "Headaches are about the same.  Some relief from Imitrex nasal spray.  Since his last visit he tried milnacipran.  Treated the dose up to 50 mg daily.  No improvement in his headaches.  Feels agitated as a side effect." <u>Id.</u> at 332.   Dr. Devor noted that "Trazodone has improved [Plaintiff's] sleep quality." <u>Id.</u> at 334.  On March 18, 2014, Dr. Devor authored a note stating "Angelo D Sanchez continues to be under my care for severe daily migraine headaches.  Unfortunately his headaches have been refractory to all available medications resulting in continued disability." <u>Id.</u> at 331, 377.

**B.  <u>Headache Questionnaire</u>**

In a questionnaire dated February 12, 2012, Plaintiff reported that he has suffered from severe headaches since the age of 14.  <u>Id.</u> at 159-60.  Plaintiff stated that he has headaches "[a]ll day, every day" and that his last four headaches occurred on the preceding four days.  <u>Id.</u> at 159.   Plaintiff stated that he experiences "severe throbbing, occasional stabbing pain, sensitivity to light and heat, vomiting, irritability, blurred vision, sensitivity to sounds, diarrhea, [and] lightheadedness." <u>Id.</u>  Plaintiff listed the variety of medications that he takes and stated that the medication "has reduced some of the more severe migraines but has not helped the daily migraines." <u>Id.</u> at 160.

**C.**     <u>**Disability Hearing**</u>

On April 7, 2014, ALJ Radensky presided over the disability hearing during which Plaintiff and a vocational expert testified.  <u>Id.</u> at 27-41.  Plaintiff testified that he stopped working in June 2009, when he was laid off from his job at Sony Online Entertainment as part of a mass layoff.  <u>Id.</u> at 28-29.  Plaintiff testified that although he continued to look for work after 2009, he noticed that the migraines were occurring more frequently.  <u>Id.</u> at 30.  Plaintiff testified that his headaches occur "at least half" of the days each month and that the pain is "excruciating" and incapacitating.  <u>Id.</u> at 31.  Plaintiff reported that he is unable to focus, his vision doubles, and he is sensitive to sound.  <u>Id.</u>  Plaintiff described his medical care and reiterated that he gets severe headaches despite the Botox treatments and other medications.  <u>Id.</u> at 32-33, 36-37.  Plaintiff also testified that he has a standing prescription for Toradol and that he had to go to the clinic at least 12 times in the last six months to get Toradol shots because his migraine was too severe.  <u>Id.</u> at 37.

With regard to medical absences, the VE testified that an "employer will tolerate one, up to two days.  But once the individual starts to have two days of absences or more on a consistent basis, they won't be able to maintain employment."  <u>Id.</u> at 39.  The VE concluded that two or more absences on a regular, recurring basis would preclude all work.  <u>Id.</u>

<u>**STANDARD OF REVIEW**</u>

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  <u>Id.</u>; <u>see also</u> <u>Batson v. Comm'r Soc. Sec. Admin.</u>, 359 F.3d 1190,

8

1   1193 (9th Cir. 2004).

2          Substantial evidence is "more than a mere scintilla, but may be less than a

3   preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).  It is

4   "relevant evidence that, considering the entire record, a reasonable person might accept as

5   adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v.

6   Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "In determining whether the [ALJ's] findings

7   are supported by substantial evidence, [the court] must review the administrative record as a

8   whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

9   conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted).  Where

10  the evidence can reasonably be construed to support more than one rational interpretation, the

11  court must uphold the ALJ's decision. See Batson, 359 F.3d at 1193.  This includes deferring to

12  the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d

13  at 509.

14         Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions,

15  the court must set aside the decision if the ALJ failed to apply the proper legal standards in

16  weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193.  Section

17  405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's

18  decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social

19  Security Administration for further proceedings.  Id.

20                                          **DISCUSSION**

21         Plaintiff argues that the ALJ erred when he determined that Plaintiff's impairments were

22  non-severe.  Pl.'s Mot. at 3-6.  Plaintiff explains that the ALJ's summary of the medical evidence

was inaccurate and incomplete in that it disregarded evidence of Plaintiff's deteriorating condition and minimized the frequency and severity of his headaches.  Id. at 6.  Plaintiff also asserts that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. William Devor.  Id. at 6-9.

Defendant responds by arguing that the ALJ did not commit reversible error and there was ample evidence in the record supporting the ALJ's findings.  Def.'s Mot.  Defendant asserts that the ALJ properly relied on the medical records, normal clinical findings, and Plaintiff's activities of daily living to find that Plaintiff's migraine headaches did not cause significant functional limitation.  Id. at 4-5.  Defendant also argues that the evidence does not support Plaintiff's claim that his medical condition deteriorated over time.  Id. at 6-7.  Finally, Defendant asserts that the ALJ properly found that the non-treating physician opinions that Plaintiff's condition was not severe were supported by the medical record.  Id. at 7.

**A.      ALJ's Step Two Non-Severe Determination**

Pursuant to Social Security regulations, the ALJ is required to follow a five-step sequential evaluation process for determining whether a claimant is disabled.  See 20 C.F.R. § 416.920(a). At the first step, ALJ Radensky determined that Plaintiff had not engaged in substantial gainful activity since November 27, 2011, the alleged onset date of disability.  AR at 12.  This finding is not contested.

At the second step, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. § 404.1520(a)(4)(ii).  ALJ Radensky determined that Plaintiff had the following medically-

determinable impairments: migraine headaches and depression.  AR at 12.  The ALJ further found that Plaintiff "d[id] not have an impairment or combination of impairments that ha[d] significantly limited (or [wa]s expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months," and that consequently Plaintiff did not have a "severe impairment or combination of impairments."  Id. (citing 20 C.F.R. § 404.1521 *et seq.*). Plaintiff contests this finding.  Pl.'s Mot. at 4-6.

The inquiry at step two is a de minimis screening "to dispose of groundless claims."  Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (citation omitted).  A claimant is required to make a "threshold showing" that (1) he has a medically determinable impairment or combination of impairments, and (2) the impairment or combination of impairments is severe.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).  The burden of proof is on the claimant to establish a medically determinable severe impairment.  Id.; see also Uy v. Colvin, 2015 WL 351438, at *7 (E.D. Cal. Jan. 26, 2015).  An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs."  See 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(b).  "Basic work activities" include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling", "seeing, hearing, and speaking", "[u]nderstanding, carrying out, and remembering simple instructions", "[u]se of judgment", "[r]esponding appropriately to supervision, co-workers and usual work situations", and "[d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b)(1)-(6).  However, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  In other words, a medical diagnosis alone does not make an impairment qualify as "severe."  Id.  Further, a medical problem which

can be controlled by medication is not severe.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Here, the ALJ found that Plaintiff's migraine headaches were not severe because he (1) determined that Plaintiff was "not entirely credible" and discounted Plaintiff's subjective symptoms[3] and (2) concluded that the subjective symptoms were not supported by the objective evidence.  AR at 13-15.  In reaching these conclusions, the ALJ relied on old or isolated facts and ignored more recent and consistent contrary facts.  The first two reasons provided by the ALJ are:

> First, [Plaintiff] alleged migraine headaches since childhood.  However, he worked consistently with migraines since 1998.  Second, the record indicates that [Plaintiff] stopped working due to a business-related layoff rather than because of the allegedly disabling impairments.  There is no evidence of a significant deterioration in [Plaintiff's] medical condition since the layoff.  A reasonable inference, therefore, is that [Plaintiff's] impairment would not prevent the performance of that job, since it was being performed adequately at the time of the layoff despite a similar medical condition.

Id. at 14.  These reasons and the inference are not supported by the facts as numerous medical records indicate that Plaintiff's headaches became increasingly severe and resistant or non-responsive to medical treatment after Plaintiff's June 2009 layoff.  See e.g. id. at 274 (December 2011 doctor note that "[h]eadache may be becoming refractory to Botox and oral medications");

_____

[3]  The Court notes that Plaintiff did not challenge the ALJ's determination that Plaintiff was less than fully credible.  Pl.'s Mot.; Def.'s Mot. at 5 n.4; Pl.'s Reply.  As a result, the Court will not conduct the required two-part analysis.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  However, Plaintiff does challenge the sufficiency of the evidence supporting the ALJ's conclusion that the impairment is non-severe so the Court will consider the ALJ's reasons in that regard.

283 (April 2012 note definitively stating that "[h]eadache[s] have become refractory to Botox and medications"); 313 (same conclusion in June 2012); 312 (June 2012 report that Plaintiff's headaches are occurring more frequently and becoming more severe); 321-23 (October 2012 report that doctor will increase Botox dose and noting the specific drugs that are not effective); 344 (March 2013 report indicating that Botox only helps for 7-8 weeks); 342-43 (May 2013 report that pain averages 8 out of 10 and "feels like someone screwing a corkscrew into his head," identifying drug that doesn't work, and expressing concern that "[b]enefit of higher dosage of Botox unclear"); and 337 (November 2013 report noting that Plaintiff continues to suffer from daily headaches, pain ranges from 5 to 9, and vision blurs with more severe headaches).  In addition, Plaintiff testified that he experienced frequent headaches when he was working but his last employer was very understanding about his migraine headaches and allowed him to go into a dark room when it was bad and if he didn't feel better, he could make up the work later.  Id. at 35.  The VE testified that an individual who misses two or more days of work on a consistent basis would not be able to maintain employment.  Id. at 39.  As such, there is not substantial evidence supporting the ALJ's statements that Plaintiff's medical condition is similar to his medical condition when he was working, that Plaintiff's medical condition has not deteriorated, and that Plaintiff's medical condition would permit him to work.

The third reason provided by the ALJ was that Plaintiff testified that he "was able to drive, watch television, read, and care for his pets, including cleaning the litter box and picking up after the dog" and that these activities "replicate those necessary for obtaining and maintaining employment."  Id. at 14.  The ALJ's summary does not accurately reflect the testimony.  For example, Plaintiff's response to the ALJ's question of "Do you drive?" was, "Not when I have the

migraines, sir.  Yes, but I do drive."  Id. at 35.  Similarly, Plaintiff's response to the question "Watch T.V.?" was "Occasionally, yes." and his response to "Do you do any reading?" was "Yes." Id. at 36.  Finally, the ALJ asked Plaintiff "Do you have to take care of the dog, take it for a walk, or clean up after it?" and Plaintiff responded "Just make sure it goes to the restroom, as for the cat, I clean the litter."  Id.  The ALJ did not elicit any more details from Plaintiff such as how often he performed these tasks and/or whether he was able to perform these tasks when he was experiencing migraine headaches.  As such, the ALJ's summary is inaccurate and misleading.  See Regennitter v. Comm. Of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (rejecting ALJ's reason where the stated fact or conclusion was "an inaccurate characterization of the evidence"); White v. Colvin, 2014 WL 4187823, at *4 (C.D. Cal. Aug. 21, 2014) (rejecting the ALJ's finding where it misstated the record).  The ALJ also did not address Plaintiff's testimony that he is unable to function when he is experiencing migraine headaches and that this happens at least half of the days each month.  AR at 31 ("I have to pretty much hide in the room with the lights off and the air conditioner on, just to get any kind of peace."); id. (these severe headaches occur at least 15 days each month); id. (the pain is "excruciating" and "incapcitat[ing]"); id. at 34 (on a day with a less severe headache, Plaintiff has to lie down for an hour, then can do a few chores, then has to lie down some more).  Finally, the ALJ fails to provide any explanation of how the identified activities replicate activities required for work and the VE did not opine on this issue.  See White, 2014 WL 4187823, at *7 (ALJ must "specify how plaintiff's ability to perform such tasks would translate into an ability to perform gainful employment.").

In a subsequent paragraph apparently addressing the objective medical evidence that the ALJ believed contradicted Plaintiff's subjective symptoms, the ALJ mentioned only facts or statements made prior to the date of disability onset.  Id. at 14 (discussing treatment notes from 2010 and March 2011[4]).  While the summary makes it sound as if Plaintiff is doing well dealing with his headaches, the statements relied upon by the ALJ all precede the date of disability onset.  In addition, the summary ignores the June 2011 statements that Plaintiff was experiencing daily headaches and that his ability to concentrate was compromised, and the September 2011 statements that his daily headaches were 7-8 on a 10 point scale, he continued to have trouble concentrating, and that ibuprofen and Wellbutrin were not helping.  Id. at 253, 261.

In the next paragraph, the ALJ addressed progress notes from the disability time period but selected only statements that supported the non-severe determination and ignored other statements, records, and notes that indicated Plaintiff's migraine headaches were more severe.  Id. at 14.  For example, the ALJ noted that Plaintiff had headaches "three times a month, and severe headaches once or twice a month," "no associated abnormal neurological symptoms,"

_____

[4]  The paragraph states:

> Treatment notes from December 20, 2010 indicated the claimant had significant headaches due to stress (Ex. 1F, p. 3-4).  It noted the claimant was currently having high stress because of unemployment and marital problems.  The claimant admitted good relief from Botox injections.  The claimant was diagnosed with common migraine, not intractable.  Treatment notes dated March 21, 2011 reported the claimant's headaches were better and was getting good relief with treatment (Ex. 1F, p. 23).  The claimant was attending school.

Id.

"common migraine, not intractable," and experienced "some relief with medications and Botox injections."  Id.  The ALJ does not mention the numerous reports in which Dr. Devor reports that the headaches have become refractory to Botox and medications (id. at 274, 283, 302, 313, 321-23, and 344), the reports in which Plaintiff had to go to the clinic to get Toradol injections because the pain was so bad and frequent (id. at 289-90, 296-97, and 302-04), and the reports in which Plaintiff complains that the headaches are frequent, severe, and resistant to drugs (id. at 302, 312, 332, 337, and 342-46).  An ALJ may not simply ignore evidence in the record that suggests a different result than the one reached by the ALJ.  See White, 2014 WL 4187823, at *4 (citing Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)).

In summary, the ALJ erred by relying on isolated statements made prior to the date of disability onset, inaccurately summarizing medical evidence, and ignoring evidence that suggested a different result.  The medical evidence clearly established that during the relevant time period, Plaintiff experienced recurrent severe migraine headaches that were increasingly resistant to medical treatment.  As such, the Court finds that there is not substantial evidence supporting the ALJ's finding at step two that Plaintiff's disability claim based on his migraine headaches was "groundless."  See Webb, 433 F.3d at 688 (concluding that ALJ erred by stopping at step two because "there was not substantial evidence to show that [plaintiff's] claim was 'groundless.'"); Bakewell v. Comm. Of Soc. Sec. Admin., 360 F. App'x 945, 946 (9th Cir. 2010) (finding ALJ erred in finding migraine headaches non-severe at step two where evidence showed "migraines incapacitated her for several days and that her persistent symptoms were not controlled effectively with medication"); Kreisher v. Colvin, 2013 WL 4780548, at *4 (E.D. Cal. Sept. 5, 2013) (holding that ALJ erred in finding migraine headaches non-severe at step two

16

where plaintiff was regularly complaining about the pain and was being treated with medication); Beech v. Colvin, 2014 WL 2931177, at *5 (C.D. Cal. June 26, 2014) (finding the ALJ erred in determining migraine headaches were non-severe at step two because plaintiff had history of migraine headaches and a non-treating doctor found functional limitations due at least in part to migraines but determined error was harmless because limitations were considered at step four); White, 2014 WL 4187823, at *4 (step two de minimis standard satisfied where migraine headaches "not always sufficiently managed with medication, that it was worsening, and most critically that it was impacting her ability to do work.").

**B.   ALJ's Rejection of the Treating Physician's Opinion**

As discussed above, Dr. Devor treated Plaintiff for his migraine headaches from at least 2010 through 2014.  AR at 207-377.  In a letter dated March 18, 2014, Dr. Devor stated "Angelo D. Sanchez continues to be under my care for severe daily migraine headaches.  Unfortunately his headaches have been refractory to all available medications resulting in continued disability." Id. at 331, 377.  The ALJ found this conclusion to have "no probative value" because the

> statement contained no specific limitations and was not supported by the objective medical evidence or the claimant's admitted activities.  [Plaintiff] was able to work steadily since 1998 with headaches, and he admitted he was able to drive, watch television, and care for pets.  The record even showed [Plaintiff] was attending school.  As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(e) and SSR 96-5.

Id. at 15.  Plaintiff argues that the ALJ erred when he rejected Dr. Devor's opinion on the grounds that it was unsupported by the objective medical evidence and Plaintiff's admitted activities.  Pl.'s Mot. at 7-9.  Plaintiff also asserts that the ALJ failed to recontact Dr. Devor as required by Social Security Ruling 96-5p.  Id. at 8.

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant.  See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)).  If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  Id.  Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Id.  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record."  Townsend v. Colvin, 2013 WL 4501476, at *6 (C.D. Cal. Aug. 22, 2013) (internal quotations omitted) (citing Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600).

If a treating doctor's opinion is not afforded controlling weight,

the ALJ must consider the 'length of the treatment relationship and the frequency of examination' as well as the 'nature and extent of the treatment relationship' . . . . In addition, the ALJ must still consider the other relevant factors such as 'the amount of relevant evidence that supports the opinion and the quality of the

1        explanation provided' and 'the consistency of the medical opinion with the record
2        as a whole.'

3    West, 2015 WL 4935491, at *8 (quoting Orn, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c); and
4    404.1527(c)).

5        Here, the treating physician's opinion that Plaintiff was disabled was contradicted by two

6    non-treating doctors, Drs. Lee and Masters, who reviewed Plaintiff's medical records and

7    determined that he was not disabled.  AR at 15, 42-48, 50-56.  In reaching this decision, Dr.

8    Lee concluded that "there is no objective evidence of a severe persisting functional impairment

9    that would more than minimally affect work performance."  Id. at 45.  Dr. Lee explained that

10   Plaintiff's claims were only "partially credible with respect to the degree of severity" and Plaintiff

11   acknowledged that medication reduces the severity of the severe headaches, although he still

12   regularly experiences less severe headaches.  Id.  Dr. Lee also noted that Plaintiff has never

13   gone to the emergency room due to the severity of his headaches, has not been given any

14   physical restrictions due to his headaches, and stopped working due to a lay off, not as the

15   result of his headaches.  Id.  Dr. Masters agreed with Dr. Lee's conclusion.  Id. at 50-56.  Dr.

16   Masters noted that Plaintiff had recently presented at the emergency room for headaches but

17   the medical staff diagnosed Plaintiff with anxiety due to unemployment and marital problems.

18   Id. at 53.

19       As discussed in detail above, there is not substantial evidence supporting the ALJ's

20   conclusion that Dr. Devor's opinion was not supported by objective evidence.  The medical

21   records provided by Dr. Devor contain numerous entries reporting that Plaintiff's migraine

22   headaches were becoming more severe and resistant to treatment.  Id. at 207, 227, 254, 262,

272, 283, 313, 321, 347, 345, 343, 339, and 334.  In addition, neither Plaintiff's testimony nor

any other evidence supports the ALJ's statement regarding Plaintiff's capabilities.  See id. at 30-

36; supra pp. 13-14; White, 2014 WL 4187823, at *4 (finding error where the ALJ misstated the

record and ignored contradictory evidence).  There also is not substantial evidence supporting

the non-treating physician's opinions because they rely on facts preceding the period of disability

and ignore more recent medical records.  AR at 45 (Dr. Lee's opinion relies on statements that

Plaintiff's headaches improve with medication, that Plaintiff has never gone to the ER for his

headaches, and worked with headaches since age 14 and was laid off, not terminated due to

headaches); 53 (Dr. Master states "[a]ll clinic notes label the HAs as 'common migraines, not

intractable,'" and "[m]ost recent hospital report found claimant presenting for headaches.  There

was dx of anxiety due to unemployment and marital problems."); see also Kreisher v. Colvin,

2013 WL 4780548, at *6 (E.D. Cal. Sept. 5, 2013) (finding ALJ erred by rejecting treating

physician's opinion based in part on plaintiff's work before and after the disability period and for

failing to provide specific reasons for rejecting the opinion).  Finally, the ALJ did not consider

the "length of the treatment relationship" between Dr. Devor and Plaintiff, the frequency of the

examinations, and the medical evidence that supports Dr. Devor's opinion.  See West, 2015 WL

4935491, at *8; Pierce v. Colvin, 2014 WL 2159388, at *2 (C.D. Cal. May 23, 2014) (stating that

"[e]ven when not entitled to controlling weight, 'treating source medical opinions are still entitled

to deference and must be weighed'" in light of "(1) the length of the treatment relationship;

(2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the

supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the

area of specialization.") (citing Edlund v. Massanari, 253 F.3d 1152, 1157 n.6 (9th Cir. 2001)).

Accordingly, and because the ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting Dr. Devor's opinion, the Court finds that the ALJ erred in doing so.  See Lester 81 F.3d at 830-31; Bakewell 360 F. App'x at 946.

## C.   **Remand v. Reversal**

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits."  Id.

Here, the ALJ erred by concluding that Plaintiff's migraine headaches were not severe under the step two de minimis standard.  Because the ALJ found Plaintiff was not disabled at step two, the ALJ did not conduct any analysis for steps three thru five and there are numerous issues that must be considered and resolved at steps three through five.[5]  This Court therefore

---

[5]  The Court also notes that the ALJ's report is internally inconsistent.  Initially, the ALJ states that Plaintiff has a medically determinable impairment of migraine headaches.  AR at 12.  After setting forth his analysis, the ALJ concludes that Plaintiff "has not established a medically determinable impairment which could reasonably be expected to produce the alleged symptoms."  Id. at 14.  The ALJ does not identify which symptoms cannot reasonably be expected to be the result of migraine headaches.  Then, in the final conclusion, the ALJ recites that the "residual functional capacity assessment is supported by the evidence as a whole" and that Plaintiff "can do work subject to the residual functional capacity determined herein."  Id. at 15.  The report does not identify any residual functional capacity as the ALJ stopped at step two. The ALJ should address these inconsistencies or inaccuracies during the remand process.

**RECOMMENDS REVERSING** the decision of the ALJ and **REMANDING** for further consideration.

<u>**CONCLUSION**</u>

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Cross-Motion for Remand be **DENIED** and that the decision of the ALJ be **REVERSED** and **REMANDED** for further consideration.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **<u>October 7, 2016</u>**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **<u>October 21, 2016</u>**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: 9/21/2016

Hon. Barbara L. Major
United States Magistrate Judge

22

16cv31-LAB (BLM)